[S. F. No. 11955. In Bank.—October 28, 1926.]

In the Matter of DANIEL O'CONNELL, Petitioner for Reinstatement as an Attorney and Counselor at Law.

[1] ATTORNEY AT LAW—DISBARMENT—PETITION FOR REINSTATEMENT—TRANSFER TO SUPREME COURT—JURISDICTION.—The supreme court has power to order transferred to it a proceeding for the reinstatement of a disbarred attorney, after decision by the district court of appeal, but before the latter's judgment has become final.

[2] ID.—REVIEW BY SUPREME COURT—OPINION OF DISTRICT COURT OF APPEAL—FINDINGS OF FACT.—The supreme court in reviewing a petition for the reinstatement of a disbarred attorney, upon a

---

1. See 3 Cal. Jur. 750.

transfer of the proceeding to it after decision by the district court of appeal, is not confined to errors appearing on the face of the opinion of the district court of appeal, nor is it bound by the findings of fact expressed or implied, made by the latter court, as the proceeding is one in which the district courts of appeal have original jurisdiction.

[3] ID.—RULE OF PRACTICE.—The practice established by the decisions of the supreme court, to the effect that, in considering petitions for hearing in that court, after judgment in the district court of appeal, the former court will consider only the opinion of the latter court and will not look into the record, is confined to appeals required by the constitution to be taken to the district court of appeal, and has never been extended to original proceedings instituted in the district courts of appeal.

[4] ID.—GROUNDS FOR REINSTATEMENT—GOOD MORAL CHARACTER—INSUFFICIENT SHOWING.—A present apparent good moral character is not the only qualification that recommends an attorney for readmission to the society and association of the legal profession after he has been disbarred, but restoration should only come when he has lived long enough after his disbarment in honorable intercourse with his fellow-citizens to demonstrate that he is both tried and true.

[5] ID.—CONSPIRING TO OBSTRUCT RECRUITING—MORAL OBLIQUITY.—There can be no question but that moral obliquity is established by the final conviction of an attorney at law upon a charge of having wilfully engaged in a conspiracy to obstruct the recruiting or enlistment service of the United States when the nation was at war.

[6] ID. — UNCHANGED ATTITUDE — UNSATISFACTORY EXPLANATION OF CONDUCT.—In such a case, where the petitioner, who was disbarred after conviction of said offense, in explanation on his application for reinstatement, merely attempts to justify certain views held and advocated by him in relation to the Espionage Act and the Selective Service Law, which led to his conviction on the charge of conspiracy, and seeks to justify his position, in view of his unchanged attitude, neither his attempted explanation nor testimony of present good character is sufficient to warrant granting his application for reinstatement.

---

(1) 15 C. J., p. 1030, n. 35.  (2) 15 C. J., p. 1030, n. 35, p. 1031, n. 66 New.  (3) 15 C. J., p. 1030, n. 35.  (4) 6 C. J., p. 615, n. 82, 84.  (5) 6 C. J., p. 585, n. 2.  (6) 6 C. J., p. 615, n. 84.

4. See 3 Cal. Jur. 751; 2 R. C. L. 1114.
6. See 3 Cal. Jur. 752.

APPLICATION for reinstatement as attorney and counselor at law. Denied.

The facts are stated in the opinion of the court.

Daniel O'Connell, *in propria persona.*

Warren Olney, Jr., H. W. Glensor and Ernest Clewe for San Francisco Bar Association.

WASTE, C. J.—The petitioner, Daniel O'Connell, was precluded from practicing as an attorney and counselor in the courts of the state by an order of this court made December 28, 1920. (*In re O'Connell,* 184 Cal. 584, 588 [194 Pac. 1010].) On April 28, 1924, he made application to the district court of appeal for the first district, division two, for reinstatement. His application was granted, but, before the judgment became final, this court, on petition of the San Francisco Bar Association, transferred the cause here "for hearing and decision." [1] That the court had power to order the transfer cannot be questioned. (*In re Wells,* 174 Cal. 467, 473 [163 Pac. 657]; *In re McCowan,* 175 Cal. 51 [170 Pac. 1100].)

[2] It is the contention of the petitioner that, although the cause has been transferred here, this court cannot go behind the opinion of the district court of appeal, and must confine its consideration to any errors appearing on its face, and that this court is bound by the findings of fact, express or implied, made by the other court. The rule contended for by petitioner has no application to this case, for the district courts of appeal have original jurisdiction over applications for restoration to practice after disbarment. When such causes are transferred to this court it is immaterial that the opinion of the district court of appeal may not show any error upon its face, when considered without regard to the record. [3] The practice established by our decisions, to the effect that, in considering petitions for hearing in this court, after judgment in the district court of appeal, we will consider only the opinion of that court and will not look into the record, is confined to appeals required by the constitution to be taken to the district court of appeal, and has never been extended to original proceedings instituted in

those courts. (*Rockridge Place Co.* v. *City Council,* 178 Cal. 58, 60 [172 Pac. 1110].) The willingness of this court to accept the opinion of the district court of appeal as a correct determination of the facts in another case (*In re McCowan,* 177 Cal. 93–104 [170 Pac. 1100],) does not suffice to change the rule. The present application for restoration to practice, after disbarment, is now before this court in all respects as a *de novo* proceeding, and we may examine the entire record, both as to facts and the law, as fully as though it had been originally instituted here.

Daniel O'Connell, the applicant for reinstatement, was convicted, with other defendants, in the United States district court for the northern district of California of the crime of having wilfully engaged in a conspiracy to obstruct the recruiting or enlistment service of the United States when the nation was at war. Judgment and sentence to imprisonment for seven years in the United States penitentiary at McNeil Island was affirmed by the United States supreme court (*O'Connell* v. *United States,* 253 U. S. 142 [64 L. Ed. 827, 40 Sup Ct. Rep. 444, see, also, Rose's U. S. Notes Supp.]). A certified copy of the judgment was filed in this court, and, after due proceedings, the name of O'Connell was ordered stricken from the roll of attorneys. (*In re O'Connell, supra.*)

After serving for a time in the federal prison O'Connell returned to San Francisco and petitioned for reinstatement. His application was opposed by the San Francisco Bar Association, which filed an answer denying generally the alleged good behavior of the petitioner and his fitness to practice law. It also denied that petitioner is a person of good moral character. By stipulation of the parties the matter was referred to Mr. Justice Nourse, of the district court of appeal, sitting as a commissioner for the taking of testimony, which appears to have been largely directed to the question of the moral character of the applicant.

O'Connell is a man advanced in years, who has practiced law many years, and has no other means of earning a livelihood. He was admitted to practice at the bar of the supreme court of the District of Columbia in 1886, and in the same year was constituted an attorney and counselor of the district court of the United States for the District of Massachusetts. He is still on the list of attorneys in each

court, and, according to the certificate of the respective clerks, is in good standing so far as those courts are concerned. O'Connell testified to his own good character, and presented a document from which it appeared that the signers, some twenty-five in number,. "believed" O'Connell to be a person of good moral character and fit to practice law. It was signed by members of the bar of this state practicing in San Francisco and by public officials, all of whom have known the petitioner for many years. A number of the signers appeared before the commissioner and testified to O'Connell's present good moral character. Some of them admitted that when they signed the statement they were not aware of O'Connell's previous record of conviction and disbarment. Others said, in effect, that their testimony would have been the same if they had possessed such knowledge.

In support of the opposition to the reinstatement of petitioner it was shown that on July 7, 1897, O'Connell was convicted in the superior court of Middlesex County, Massachusetts, on a charge of being accessory to the giving of a bribe to a municipal officer of the city of Lowell, with intent to influence the officer's vote on an official matter. The judgment of conviction was affirmed. (*Commonwealth* v.. *Donovan et al.,* 170 Mass. 228 [49 N. E. 104].) After the conviction, and on proof of the facts which led to it, and on the further grounds that he improperly appeared on both sides of the same litigation, and had used legal process in an abusive and oppressive manner, O'Connell was disbarred from the practice of law in the commonwealth. (*In re O'Connell, Petitioner,* 174 Mass. 253, 262 [53 N. E. 1001, 54 N. E. 558].) He came to California from Massachusetts, and on August 11, 1904, applied to this court and was admitted to the bar on production of his certificate from the supreme court of the District of Columbia. He did not disclose to the court the fact that he had been previously convicted of a crime and disbarred from practice in Massachusetts. Some time afterward the omission was called to the attention of the court. The Chief Justice demanded an explanation and O'Connell appeared before him, but no steps were taken to revoke the license he had been granted, although the members of the court appear to have been divided on the question as to what should be done. In 1913 the conduct of O'Connell was the subject of investigation

by the grievance committee of the San Francisco Bar Association, it being charged that he had received a large sum of money for certain clients interested in the bankrupt California Safe Deposit and Trust Company, and did not inform them that he had been paid, but retained all of it for his own use. The transaction was investigated by the grievance committee of the Bar Association, and was also the subject of inquiry in a proceeding in the superior court. O'Connell claimed he had received the money as a fee. The grievance committee advised that proceedings for disbarment be instituted against him, but the recommendation was rejected by the Bar Association. It thus appears that during practically his entire career as a member of the bar O'Connell's conduct has not been such as to justify a belief that it will be beyond reproach if he be permitted to resume the practice of the law.

[4] From this summary of the record it appears that the petitioner's application for restoration rests primarily upon his opinion of himself, and that of others, that he is now possessed of a good moral character and is fit to practice law. If that were the only evidence in the record to be given effect we could, with entire propriety, hold it sufficient to support a favorable consideration of petitioner's application. But a present apparent good moral character is not the only qualification that recommends an attorney for readmission to the society and association of the legal profession. "When a member of the profession has been found lacking in the requisites which go to make him a helper to his clients, and has been discovered to possess aims, views and purposes which indicate a moral obliquity in him, and which might make his clients his victims, it is well that he were removed from the possibility of doing them harm. When he has been once disbarred, a mistaken charity should not restore him to his position. That restoration should only come when he has lived long enough after his disbarment in honorable intercourse with his fellow citizens to demonstrate that he is both tried and true." (*Application of Shepard*, 35 Cal. App. 492, 501 [170 Pac. 442, 446].) The attitude of the petitioner here is not such as to convince this court that it should lift the ban of disbarment now placed upon him. Aside from his contention that he is now held in sufficient esteem in the estimation of his fellow-men to

warrant the assumption that he will in future show a due regard for the duties and responsibilities of his profession, he is here seeking to justify the conduct which led to his being charged with conspiracy, and for which he was convicted in the federal court, and which resulted in his disbarment here.

When O'Connell was before this court in the disbarment proceeding he stoutly maintained that the crime of which he was convicted did not involve moral turpitude. He is, in effect, making the same contention here. The criminality of the offense of which he was convicted was determined by the highest tribunal of the nation. (*Frohwerk* v. *United States*, 249 U. S. 204, 209 [63 L. Ed. 561, 39 Sup. Ct. Rep. 249, see, also, Rose's U. S. Notes Supp.]; *O'Connell* v. *United States, supra.*) In ordering his name stricken from the roll of attorneys this court said (184 Cal., p. 587 [194 Pac. 1011]) : "That such conduct on his part would involve moral obliquity and constitute a base offense against his fellow-men and his country entirely regardless of statute prohibiting it cannot, it seems to us, be seriously questioned. It is conduct closely akin to that constituting treason, than which, in the estimation of mankind generally, nothing could be more base. Moral turpitude has been defined by many authorities as 'an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow-men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.' (See *In re Henry,* 15 Idaho, 755, 758 [21 L. R. A. (N. S.) 207, 99 Pac. 1054, 1055].) *In the Matter of Coffey,* 123 Cal. 522 [56 Pac. 448], we approved the definition of turpitude given by Bouvier, viz., anything done 'contrary to justice, honesty, modesty or good morals.' We entertain no doubt that the offense with which the accused was charged and of which he was convicted comes within these definitions."

[5]  There can therefore be no question but that the moral obliquity of the petitioner was established by his conviction, which led to his disbarment. The record was conclusive evidence of the justice of the conviction, and laid on him a moral stigma that rests upon him until it be satisfactorily explained, or there is unmistakable evidence, by years of correct living and a proper attitude on the part of the convicted person, that it no longer exists. [6]  The explanation

the petitioner here attempts to make is wholly unsatisfactory —in fact, it is no explanation. It amounts merely to an attempt to justify certain views held and advocated by O'Connell in relation to the Espionage Act (40 Stat. 217) and the Selective Service Law, which led to his conviction on the charge of conspiracy to obstruct the nation's efforts in time of war. He seeks to justify his position, and thereby admits that he committed the acts for which he was convicted. With the beliefs and opinions of the petitioner this court has nothing to do, except as it is to be anticipated that he is still prepared to utter them and to act on them under circumstances and in a manner calculated to lead others to violate and disregard existing laws. In view of petitioner's unchanged attitude, neither his attempted explanation of the conduct for which he was convicted nor the testimony as to his present good character affords sufficient evidence to support a favorable consideration of his present application to be reinstated to the practice of law.

The application is, therefore, denied.

Richards, J., Shenk, J., Curtis, J., and Seawell, J., concurred.

Rehearing denied.