# In re Stump.

**(Decided March 15, 1938.)**

594

J. J. MOORE and P. B. STRATTON for petitioner.

A. FLOYD BYRD, HUBERT MEREDITH, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for respondent.

OPINION BY STANLEY, COMMISSIONER—Confirming Report of Bar Commissioners.

In obedience to the mandate of this court, the Pike circuit court entered a judgment on April 4, 1933, disbarring O. A. Stump from the practice of law. Commonwealth ex rel. Pike County Bar Association v. Stump, 247 Ky. 589, 57 S. W. (2d) 524. Subsequently, the statute was enacted providing for the organization of a State Bar Association and vesting authority in the Court of Appeals to promulgate rules of practice and procedure for the discipline, suspension, and disbarment of attorneys at law. Chapter 3, Acts 1934; section 101-1 et seq., Kentucky Statutes; Commonwealth ex rel. Ward v. Harrington, 266 Ky. 41, 98 S. W. (2d) 53; In re Sparks, 267 Ky. 93, 101 S. W. (2d) 194; Commonwealth ex rel. Buckingham v. Ward, 267 Ky. 627, 103 S. W. (2d) 117; Louisville Bar Association v. Clarke, 270 Ky. 315, 109 S. W. (2d) 619; Louisville Bar Association ex rel. Drane v. Yonts, 270 Ky. 503, 109 S. W. (2d) 1186. Under the authority of this act, the court has promulgated the following rule:

"All applications for reinstatement to the practice of law shall be made to the Court of Appeals and shall be filed in the office of the clerk of the court. Thereupon such applications will be referred to the board for hearing. After hearing the board shall make its recommendations, which shall be filed with the Court of Appeals for the entry of such orders thereon as the court may deem advis-

able. It matters not by what tribunal the applicant was disbarred, the method of reinstatement herein provided shall be exclusive."

Under this rule on July 27, 1936, Mr. Stump petitioned the court for reinstatement, setting forth what he deemed to be sufficient reasons. A response and protest were filed by one Alex Blackburn in which he stated that it was for himself and, at request, for and on behalf of other citizens of Pike county and a large number of the members of the Pike county bar. It consists of denials and affirmative allegations of improper conduct since the disbarment. A reply was filed to it. The application was thereupon referred to the Board of Bar Commissioners, which has been established for the purpose of considering such matters, for their examination and recommendation. Thereafter Mr. Blackburn asked to withdraw his response and protest, but his motion was overruled by the commissioners. Blackburn had previously sued Judge Stump for damages based upon alleged illegal and tyrannical judicial action affecting him. Hon. A. Floyd Byrd was appointed by the board to investigate the application and to see that the case was properly presented. This was eminently proper, for proceedings of disbarment and restoration are not adversary but inquisitorial. Mr. Byrd adopted the allegations of the Blackburn protest.

The bar commissioners designated two of their number, namely, Hon. L. J. Crawford and Hon. G. W. Hughes, as a trial committee. After hearing and considering much evidence, the committee filed a report of the law and the facts. It manifests diligent study of both those factors, which must determine the case, and shows a fair, impartial, and sympathetic hearing was given the application. This with their recommendation that the application be denied and the briefs of counsel were considered by the entire membership of the bar commissioners. That board has filed with the court a finding that the facts are not such as to entitle the petitioner to resume the practice of law, and a recommendation that the petition be denied. The respondent has filed exceptions to the report. The entire record is before us for final decision.

We first consider the law. It is a well-settled principle that disbarment is not res adjudicata or necessarily permanent, and that a disbarred attorney may be

reinstated for reasons satisfactory to the court. 2 R. C. L. 1113; 5 Am. Jur. 443; 6 C. J. 615; 7 C. J. S., Attorney and Client, p. 814. It may be laid down as a general proposition that though the door to re-entrance into the profession is not forever closed, its opening is not a matter of grace or pardon for past offenses. If it is to be opened, it must be a matter of justice; albeit "mercy seasons justice." The courts have a serious duty to perform, not only to the erring lawyer, but to the legal profession and to the public as well. And of equal gravity is the duty of the courts to protect themselves from readmitting as an officer one who cannot command trust and confidence.

As another general proposition, we may say that unless restrained by statute—binding if it does not invade the independence of the judicial department as a separate body of magistracy, sections 27 and 28, Constitution of Kentucky—the courts have plenary power in these matters of restoration the same as they have of disbarment. Commonwealth v. Roe, 129 Ky. 650, 112 S. W. 683, 19 L. R. A., N. S., 413; Chreste v. Commonwealth, 171 Ky. 77, 186 S. W. 919, Ann. Cas. 1918E, 122; Lenihan v. Commonwealth, 165 Ky. 93, 176 S. W. 948, L. R. A. 1917B, 1132; Commonwealth ex rel. Ward v. Harrington, supra; In re Sparks, supra. The only such limitation upon our authority is section 97, Kentucky Statutes, declaring that no person convicted of treason or felony shall be permitted to practice law in any court as counsel or attorney at law. We have held that though a lawyer so convicted may have been pardoned of the crime, he cannot be restored to his former professional status. This decision has not been placed alone upon the disqualification so mandatorily declared by the Legislature, but as well upon the broad ground that relief from the penal consequences of his act does not reinvest in the man those qualities of good character so essential for an attorney at law to possess. Nelson v. Commonwealth, 128 Ky. 779, 109 S. W. 337, 33 Ky. Law Rep. 143, 16 L. R. A., N. S., 272; Commonwealth ex rel. Harris v. Porter, 257 Ky. 563, 78 S. W. (2d) 800. Excepting these two cases and that of McMath v. Maus Bros Boot & Shoe Store, 15 S. W. 879, 12 Ky. Law Rep. 952, which incidentally involved the suspension of an attorney until he should pay over money to a client, it appears that the court has not hitherto had a reinstatement case before it.

As is stated by the trial committee of the Board of Bar Commissioners in their excellent analysis of the law, three rules have emerged from the many decisions involving the reinstatement of disbarred attorneys, namely, a lax rule, a strict rule, and what they term a reasonable middle rule, which they rightly declare to be the preferable one.

The very liberal rule is that a petition for reinstatement shall be treated as an original application for admission to the bar, so that if the applicant has produced evidence merely of present good moral character, he is readmitted. This without regard to any other record or circumstance. Under such a rule, the testimonials of good character are sufficient to insure reinstatement. It appears that this rule once prevailed in Florida and Mississippi, but has been departed from. Branch v. State, 120 Fla. 666, 163 So. 48; Ex parte Marshall, 165 Miss. 523, 147 So. 791. Upon the authority of statements in Danford v. Superior Court, 49 Cal. App. 303, 193 P. 272, and In re Cate, Cal. App., 270 P. 968, that an application for reinstatement as an attorney constitutes an application for admission to the bar, the Supreme Court of New Mexico, In re Fleming, 36 N. M. 93, 8 P. (2d) 1063, laid down such a rule. Yet in that case in considering the application for restoration of an attorney whom it had disbarred and who had returned to Oklahoma and resumed the practice of law, although he had been previously disbarred in that state before coming to New Mexico, and was again the object of pending disbarment proceedings, in Oklahoma, the New Mexico court denied the petition for reinstatement upon the ground that the petitioner was not a bona fide resident of that state. It is of interest to note that the Oklahoma court reinstated him. In re Fleming, 167 Okl. 335, 29 P. (2d) 592. The petitioner at the bar relies upon the rule stated in the New Mexico case and asks that it be applied to him. We think the rule unsound in principle and is lacking in sufficient judicial sanction as an authority.

We may put aside with but little discussion the extreme or strict rule, which all but denies restoration, since neither the attorney representing the bar commissioners nor the Attorney General, who has also filed brief, contends for its application. We are not inclined to adopt it. We are not willing to say that no matter

what a disbarred attorney's subsequent conduct may be; no matter how hard and successfully he has tried to live down his past and atone for his offense; no matter how complete his reformation—the door to restoration is forever sealed against him. Even wrongdoers convicted of crime are given another chance.

The fundamental consideration is the nature and degree of misconduct for which the attorney was disbarred and circumstances attending the offense. In sequence are his conception of the serious nature of his act and his previous and, what is of more importance, his subsequent conduct and attitude toward the courts and the practice. This involves the element of time since disbarment as constituting his testing period, for character is not developed or reconstructed in a day. And while it has been said that the recreant brother must show regret or repentance, we are not willing to say that a man must humble himself or be required to confess guilt of what may be a criminal offense. But he should at least manifest a sense of wrongdoing, and in the language of the Scriptures, "bring forth, therefore, fruits meet for repentance." By his subsequent life and conduct he must have demonstrated his reformation; for, men do not "gather grapes of thorns, or figs of thistles," and persistency in wrongdoing suggested to the prophet the unchangeable colors of the leopard's spots. The ultimate and decisive question is always whether the applicant is now of good moral character and is a fit and proper person to be reintrusted with the confidences and privileges of an attorney at law. This question has a broader significance than its purely personal aspect. From time immemorial lawyers have in a peculiar sense been regarded as officers of the court. It is a lawyer's obligation to participate in upholding the integrity, dignity, and purity of the courts. He owes a definite responsibility to the public in the proper administration of justice. It is of utmost importance that the honor and integrity of the legal profession should be preserved and that the lives of its members be without reproach. The malpractice of one reflects dishonor not only upon his brethren, but upon the courts themselves, and creates among the people a distrust of the courts and the bar. Therefore, one proven to have violated those conditions of good behavior and professional integrity annexed to the granting of the privilege of practicing law, in applying

for restoration, has the burden of overcoming by persuasive evidence the former adverse judgment on his qualification. In short, if the disbarred attorney can prove after the expiration of a reasonable length of time that he appreciates the significance of his derelictions; has lived a consistent life of probity and integrity, and shows that he possesses that good character necessary to guarantee uprightness and honor in his professional dealings and the faithful discharge of his duties as a lawyer, and therefore is worthy to be restored, the court will so order. Thornton on Attorneys at Law, sec. 902; Walker v. Commonwealth, 71 Ky. 86, 8 Bush 86; In re Snodgrass, 166 Okl. 156, 26 P. (2d) 756; In re Bruener, 178 Wash. 165, 34 P. (2d) 437; Burns v. State, Tex. Civ. App., 76 S. W. (2d) 172; In re Egan, 52 S. D. 394, 218 N. W. 1; In re O'Connell, 199 Cal. 538, 250 P. 390, 48 A. L. R. 1232; Kepler v. State Bar, 216 Cal. 52, 13 P. (2d) 509; In re Clark, 128 App. Div. 348, 112 N. Y. S. 777; In re Hawkins, 4 Boyce, Del., 200, 87 A. 243; In re Thatcher, 83 Ohio St. 246, 93 N. E. 895, Ann. Cas. 1912A, 810; Ex parte Marshall, supra.

We appraise the evidence in the light of the foregoing observations and under the control of that attitude.

Mr. Stump at the time of his disbarment was a man of mature years and a lawyer of experience. He was then and had been for several years commonwealth's attorney for his judicial district. There were eleven different charges of misconduct against him. No evidence was presented on two of them, possibly because of the disappearance of witnesses. The evidence tended to show his guilt of six charges involving moral turpitude and unprofessional conduct, but the court did not pass upon them because of the contradictions and absence of necessity. The charge that the respondent had given false testimony was sustained, but, in the light of an earlier case holding that a lawyer, like any other witness, is immune from punishment except conviction for perjury, that charge was laid to one side. The disbarment was placed upon the remaining two grounds. One was, in its essence, that the respondent, as prosecuting attorney, had connived with others to discontinue a criminal prosecution of a woman for stealing $7,000, and to stifle the prosecution of her accuser in a federal court for the commission of a felony. For this he had

received $1,000 compensation. It was further established that the respondent, in consideration of receiving one-half of another attorney's contingent fee, had testified as a witness and produced a writing which had come into his possession in his professional capacity and which under the circumstances it was his duty to disclose and to produce.

The gravity of all this misconduct is so obvious as to exclude comment. While the statute absolutely precludes restoration to the bar· where there has been a conviction of a felony, that ground does not apply be-because there has been no conviction by a jury. Yet the facts cannot be ignored. This and the other gross unprofessional misconduct and violation of legal ethics placed a heavy burden upon the petitioner of proving himself worthy.

The petitioner produced recommendations and testimonials to which we shall refer, but before doing so we may note certain subsequent derogatory acts.

After the opinion in the disbarment proceedings had been delivered, Mr. Stump filed a petition for rehearing which bore the printed names, as signers, of practically the entire membership of the Pike county bar, some of whom had been active in the prosecution of the disbarment proceedings. It appears that some were misled as to what kind of instrument they were signing and others denied signing it. Learning of this, many of the lawyers moved to have their names stricken from the petition. It is true that in this proceeding Mr. Stump testified that they had signed or authorized the signing of their names, and filed an original paper bearing the apparent signatures of most if not all of these lawyers. But we are by no means convinced.

Not long after the judgment of disbarment Mr. Stump set out to retaliate by endeavoring to procure the disbarment of the president of the Pike County Bar Association, who had been active in cleansing the bar. We affirmed the judgment of the circuit court holding him not guilty of the charges preferred and found no merit in them. Commonwealth ex rel. Wilson v. Steele, 252 Ky. 420, 67 S. W. (2d) 508. We quote from that opinion:

"The record in this case satisfactorily discloses, and indeed Stump, who testified, does not

deny it, that after Stump had been disbarred he made several visits to Frankfort to see one Conley who was serving a sentence in the penitentiary there under a conviction for the cutting of one Burnett, and procured Conley to make the affidavit upon which the information herein against the appellee was filed, and that thereafter Stump had at his expense gone to Frankfort and brought Conley to Pikeville for the purpose of testifying in this case. It further discloses that Stump had, after the institution of these proceedings, sent word to Steele that he would undertake to have them dismissed if Steele would get the bar association to reinstate Stump as a practicing lawyer.''

The petitioner failed to realize that the bar association was but performing its duty to bring to the court's attention the fact that a member of the bar was believed to be guilty of unprofessional conduct meriting censure, suspension, or disbarment. Thornton on Attorneys at Law, sec. 869.

The petitioner was elected county judge of Pike county in November, 1935. The response and objections filed to his reinstatement made a number of charges of arbitrary, improper, and illegal acts in the performance of his judicial duties. On four of these charges the Board of Bar Commissioners found the evidence to be in favor of the petitioner; and as to the others, that it was not clear and convincing that the petitioner had acted corruptly. They were of opinion that there was not a sufficient showing that he was guilty of any conduct which affirmatively bars reinstatement. Nevertheless, some of these things are not so devoid of doubt as to be without related influence. They rather tend to negative the positive claims of a continuing and present exemplary professional character. Judicial action should not give cause for suspicion and official tyranny cannot ever be justified.

Perhaps a more logical presentation would demand that the affirmative evidence offered in support of the petition for reinstatement should have been stated first. We turn to it now.

In Judge Stump's election as county judge he received about 11,000 votes, while his opponent received 500 fewer. All the other candidates of his party were

defeated by about 2,500 votes, so it may be said that he ran 3,000 ahead of his ticket. The office is one of honor and trust, and the demonstration of the election does in a large measure reflect the esteem in which the petitioner was held by his fellow citizens. Such evidence is entitled to much consideration. But it is by no means conclusive on a question of reinstatement to the bar. A multitude of factors enter into a local political race. It may be doubtful if many of the voters had knowledge of the facts upon which the disbarment rested, and we are not unmindful, as were the bar commissioners, that many men in political campaigns are "often impressed by a plea of persecution or an ex parte justification." Political popularity does not purge professional delinquency.

The petitioner filed resolutions of the bar associations of Pike, Letcher, and Floyd counties, and a recommendation signed by ten members of the Magoffin county bar. All these documents place emphasis upon the statement that the acts for which Mr. Stump was disbarred occurred eight years ago, and also upon his election as county judge. There were two meetings of the Pike County Bar Association called in behalf of the petitioner at which the resolution recommending and asking for his reinstatement was submitted. At the first meeting the resolution failed of adoption by a tie vote. At the second there were twenty-six voting for and eighteen against its adoption; but this action was attended by suspicion. It appears that some who were not actively engaged in the practice of law were present, and, upon it being disclosed that they had not paid their bar dues, an intimate associate of Judge Stump, who had not appeared in an enviable light in the disbarment proceedings, paid the dues of the ten men. This and the resolution of the Floyd County Bar Association stated that since his disbarment Judge Stump's probity and honesty have been such that he is now entitled to be readmitted to the practice of law, and the court is petitioned to restore him. The Letcher county resolution bears witness to the petitioner's "observance of the ethics of the profession" and his diligence while commonwealth's attorney in that county, which, it is said, "won the esteem and confidence of the members of this bar and the citizenship of the county, which he still holds, notwithstanding a decree later entered" disbar-

ring him. The Magoffin county resolution commends Judge Stump for his interest in the public welfare and devotion to the duties of his office, his ability as a lawyer, and then expresses the belief "that whatever purposes were hoped to have been accomplished in his disbarment have now been accomplished and that no good purpose can be served by further withholding from him the right to practice law." As stated by the bar commissioners:

> "On the issues presented in this case the opinions and recommendations of lawyers are probably entitled to more consideration than the opinions and recommendations of laymen. Lawyers may be presumed to understand the importance of these issues. The lawyers of Pike County and adjoining counties may be presumed to be familiar with the grave nature of the petitioner's past derelictions and with the opinion and holding of the Court of Appeals in the disbarment case. For these reasons your committee is inclined to give more weight to the recommendations of lawyers than to the testimony of laymen or the result of an election."

The courts must repose a great deal of confidence in the bar, and when its members are united upon any such proposition that so directly affects the profession as the reinstatement of a disbarred attorney, that recommendation cannot be disregarded. While some of the particular expressions in these resolutions do not inspire confidence as being uninfluenced, the recommendations have been given the high consideration they deserve.

The petitioner produced also the verbal evidence of thirty-one citizens of his county, including lawyers, bankers, officers, former officers, business and professional men in all walks of life. These commendatory witnesses would be more persuasive if it were shown that they knew or had taken cognizance of the petitioner's grave derelictions. They bear testimony that the reputation of the petitioner for honesty, integrity, and probity, as well as to official conduct, was good before his disbarment and has continued to date. The responsibility of these gentlemen in this decision of reinstatement is slight, and many of them doubtless more readily yielded to a natural feeling of sympathy for a personal friend. All of these recommendations and some evi-

dence of fair dealing by the respondent, without any late manifestation of retaliation, are to the petitioner's credit and are worthy of consideration. But we must return to the base.

The disbarred attorney was not dealt with for a single act of wrongdoing, or even for several acts which were merely inconsistent with a life of general rectitude, or which involved only unprofessional ethics, or a yielding to the temptation of necessity, or influence of association, or sudden stress of circumstances, or excessive zeal for victory for his clients, or even a very serious offense importing criminality, but accompanied by mitigating circumstances. If there were only such delinquencies, a belief of reformation and confidence of future good behavior would be more easily inspired and a restoration more readily justified. But the petitioner does not stand in that position. He was guilty of wrongdoing, deliberately committed, without excuse or palliation. He was the chosen and sworn representative of the people of the commonwealth of Kentucky, charged not only with upholding the law but prosecuting those who offended against it. For one such to trample those laws under foot argues recreancy to his position and office and sets a pernicious example to the insubordinate and dangerous elements of society. His subsequent conduct in the particulars stated invests his wrongdoing with additional aggravation.

From the beginning to the end of this record there is nothing tending to show an appreciation by the petitioner of the serious nature of his misconduct, or any acknowledgment of error. Nor is there any attempt at mitigation, or production of new evidence on the original charges. There is little reason to believe that the petitioner has shaken off the shackles of his misdeeds. Over against all this is the manifestation of confidence of a majority of the electorate of his county; the recommendation of a number of his former associates at the bar and many other honorable and upright citizens that he has a good reputation and should be reinstated. It may seem harsh in view of these testimonials not to reopen the doors of the profession to the petitioner. But we are not prepared to treat the entire case so lightly. We are not convinced that we should certify to the bench and bar, and to the public generally, that the petitioner has shown himself worthy of their trust and con-

fidence. If justification of precedent should be required, we may point out that in the many cases of like character covered by the annotations in 48 A. L. R. 1932, there appears no instance where the conditions were similar and a restoration was ordered.

We would not be understood as sealing the doors irrevocably against the petitioner, for our action is without prejudice to a right to renew his petition in a seasonable time and show, if he can, that he has met the terms prerequisite to restoration.

The report of the bar commissioners is confirmed and the petition for restoration is denied.

Whole court sitting, except Judge Ratliff, who took no part in the consideration or decision of the case.