## In re Sutt.

Feb. 13, 1940.

Hubert Meredith, Attorney General, for complainant.
Chas. P. Sutt for respondent.

OPINION BY STANLEY, COMMISSIONER—Confirming disbarment recommendation.

The Commissioners of the State Bar Association heard evidence upon complaint of the Louisville Bar Association that Charles P. Sutt was guilty of unprofessional practices and recommend that he be disbarred as an attorney at law. The case is before the court upon respondent's exceptions. He is forty-four years old and has been practicing law in Louisville since 1919, with the exception of a brief period when he was engaged in a commercial enterprise. He testified that he is a graduate of three law schools. The charge contains four specifications or counts.

1. Mr. Sutt represented Mrs. Ida Cozine in a suit for damages in which she recovered a judgment for $115 on April 26, 1938. He was entitled to a fee equal to fifty percent of the recovery. According to the client she frequently demanded a settlement of the attorney and was able to get it only after making complaint to the local bar association in August, 1938. Her evidence proves he evaded seeing her on several occasions. In contradiction the respondent testified that the judgment was to be satisfied in small installments and that his client had said she wanted her share to be paid in a lump sum and not in installments as collected. In this he is corroborated by his stenographer. His receipts, however, show he collected the entire judgment in two amounts in May, 1938. The respondent finally paid what was due the client and an additional $10 because of the inconvenience which the delay had caused her.

2. The respondent had been found guilty in a forcible detainer proceeding in a magistrate's court. There is no contradiction of the facts given by him, which show that he had an apparently good defense justifying his appeal to the circuit court. The surety on his traverse bond being adjudged insufficient, the respondent and a lawyer friend, Mayland, procured one Mrs. Minnie O. Schreiber to sign such a bond. She was paid $7 for doing so. Her testimony in substance is that it was represented to her by respondent and Mayland that she was signing a $100 bond for the respondent's appearance in a criminal case, and that she was deceived by them as to the nature of the bond and the extent and character of her liability. It is made manifest, however, that the terms of the bond were fully explained to Mrs. Schreiber by the circuit judge and others, and that she understood, or professed to understand, them. The only contradiction of this is her testimony that she did not understand it and had been told by the two lawyers not to pay any attention to what might be said in the court as it was all "red tape." The witness was asked if she had been sued for $1,000 on this suretyship and answered, "I think so." That is all the evidence we have as to the result of this transaction. There is no contradiction of the respondent's testimony that she had also signed a supersedeas bond for the purpose of appealing the circuit court's adverse judgment to the Court of Appears, but later he made a satisfactory adjustment of·

the entire matter with the complainant in the forcible detainer proceeding, and Mrs. Schreiber was released from liability. The evidence shows that this woman had often signed bonds for compensation at the instance of Mayland and other attorneys in criminal cases.

3. In August, 1937, one Ridge and his wife called upon the respondent to have him bring a suit for divorce for the wife, the fee and costs to be paid by the husband. The respondent agreed to do this for $35, out of which he would pay the court costs, estimated at $10.50. A petition was prepared that day and also a waiver of service and entrance of appearance, and they were then signed by the wife and husband, respectively. Following this, Sutt wrote Ridge three letters suggesting that he had not seen his client and that he or she should get in touch with him unless they had become reconciled. However, he called upon Ridge to pay the balance of the agreed fee since only $16 had then been paid. Final payment was made to the lawyer on March 1, 1938. Mrs. Ridge and her sister testified that the respondent told the former a time or two that the suit had been filed, and that on some undisclosed date he had taken them to the office of a notary public who took their depositions in the divorce case. This client had the same experience in failing to see her lawyer during the several ensuing months after he had been paid as Mrs. Cozine had, and it is apparent that he was avoiding her. Finally, she conferred with another attorney and it developed that no suit had ever been filed by Mr. Sutt. That attorney testified that Sutt wanted him to use the petition which he had prepared in the beginning and the two depositions, which he saw, changing the dates thereon. This he declined to do, but agreed to help Sutt out of his predicament by filing the suit if Sutt would pay $5.50 advance court costs and $10 later on. After some delay and avoidance, Sutt paid $5.50 to the attorney, but no more. Sutt testified that he had only taken his client and her sister to the office of the notary in another building and introduced them, with instructions that when they should give their depositions they would be taken there. The notary public corroborates Sutt that the depositions were not taken. There is no contradiction of Sutt's testimony that he had subsequently represented Ridge in some garnishment proceedings and the latter had agreed

that Sutt should keep the balance of the $35 which had been paid him in the divorce suit as his compensation in these proceedings.

4. In July, 1938, one Mrs. Ruth Asbury retained the respondent to bring a suit for divorce and custody of her child. They agreed upon a fee of $25 and the payment of court costs of $10.50 additional. Mrs. Asbury testified that when she had paid him $10.50 Sutt said he would file the suit that day. In September following, Sutt was calling for a balance of $10 for the court costs, and stated if that should be paid he would get the suit over without further delay. Mrs. Asbury testified that after the entire sum had been paid him the respondent told her, and led her to believe, that her suit had been filed. In this she is corroborated by her sister, who added that when the final installment was paid Sutt in September he said the divorce would be granted the following Thursday. No suit was ever filed. The defense to this accusation is that the respondent never told his client a suit had been filed; that he had agreed to file it when all the money had been paid him, and that all of it was never paid. Furthermore, that Mrs. Asbury had insisted that she was going to move to New Albany, although he advised her that if she did the Kentucky court would lose jurisdiction of her case. He had never been able to get in touch with her. This is denied by the client who continued to reside in Louisville at all times and her lawyer had her address. No part of this money was ever refunded the client.

Twelve lawyers of good repute bear testimony that respondent's reputation for veracity, honesty and general moral character is good. Three lawyers of equally high standing testify that he bears a bad professional reputation.

We are of opinion that the respondent's conduct in the Schreiber bond matter does not justify a conclusion of unprofessional conduct.

In connection with the Cozine case, the respondent points to Denny v. Commonwealth, 175 Ky. 357, 194 S. W. 330, in which we held that an attorney making a collection has a reasonable time, to be determined by the particular circumstances of each case, in which to make a settlement with his client, and that a reasonable delay

does not constitute a ground for suspension from practice. The respondent's settlement in this case was not merely delayed, but deliberately and deceptively delayed for an unreasonable time and was finally procured through the pressure of a professional investigation.

There is some difficulty in perceiving a motive for the attorney's conduct in the two divorce cases, but the fact remains that he did collect money from poor people for court costs and fees and then abandoned their interests. That, of course, is only a breach of contract, but such unjustified professional conduct evidences the respondent's unfaithfulness and proves his unworthiness of the confidence and trust attending the relationship of attorney and client. More reprehensible is the deception which we are convinced he practiced upon these women.

The three charges prove a course of professional conduct constituting wrong against his clients, the courts and legal profession. As stated in Re Stump, 272 Ky. 593, 114 S. W. (2d) 1094, 1097:

"From time immemorial lawyers have in a peculiar sense been regarded as officers of the court. It is a lawyer's obligation to participate in upholding the integrity, dignity, and purity of the courts. He owes a definite responsibility to the public in the proper administration of justice. It is of utmost importance that the honor and integrity of the legal profession should be preserved and that the lives of its members be without reproach. The malpractice of one reflects dishonor not only upon his brethren, but upon the courts themselves, and creates among the people a distrust of the courts and the bar."

The respondent deserves censure and his conduct a vigorous condemnation. As we have stated, the Bar Commissioners deemed his conduct so unprofessional as to justify disbarment. In view of the fact that these practices are confined to three cases, all happening within a period of less than two years throughout a practice of twenty years, the court is of opinion that the ends of justice and the purposes of the proceeding will be attained by suspending the respondent from the practice of law for a period of two years.

It will be so ordered. Whole Court sitting.