268

**JOSEPH, Disbarment Proceedings, In re.**

Common Pleas Court, Muskingum County.

No. 36430.

## OPINION

By CROSSLAND, J:

After careful study and full consideration of all the evidence received pursuant to the within application of Thomas A. Joseph for reinstatement to the profession and practice of law, including the appearance and demeanor of the applicant as a witness in his own behalf, the Court proceeds upon the premise of law predicate thereto in its analysis of the evidence, its findings therefrom and its conclusion thereto.

When a man is found guilty of a felony and confined in a penitentiary the law indulges the presumption, in most cases, that he will become eligible for parole, be released, then discharged and finally restored to full citizenship. But when a lawyer is found guilty of unethical practices involving moral turpitude, including criminal conviction and imprisonment, and is disbarred for life, the presumption of the law is that he will not be readmitted to the profession and practice of law unless he proves that his incidental personal desire is manifestly in the public interest with respect to the right administration of justice.

Punishment for the commission of crime is both punitive and as a deterrent to other potential and uncommitted crime. Disbarment, however, is not individual punishment or the imposition of a personal penalty.

It is public protection from unethical practitioners who have disregarded or violated the solemn trust and confidence reposed by the license granted for character and competence in undertaking professional service in public courts and office privacy.

"On an application for reinstatement by one who has been removed from the bar, the sole question to be determined is whether the granting of his application would probably be promotive of the right administration of justice." (In Re Thatcher, 83 Oh St 246, 1st syllabus.)

In the above case, on page 249 of its opinion, the Ohio Supreme Court stated:

"So often and so clearly have courts pointed out that in proceedings of this character the punishment of the offending lawyer is neither involved nor considered that repetition is not necessary—The general question is, will the public interest in the orderly and impartial administration of justice be conserved by his participation therein in the capacity of an attorney and counselor at law?"

Much more recently, in In Re Lieberman, 163 Oh St 41, decided March 9, 1955, the Supreme Court said:

"The purpose of disbarment is not to punish the individual. It is intended to protect the public, the courts and the legal profession."

The responsibility of a disbarred lawyer for the acts occasioning his disbarment are his alone, entered upon deliberately at his own risk, in full knowledge and broad daylight of its stated consequences. Upon application for reinstatement all factors pertaining to the applicant's disbarment, as well as his representations for reinstatement, are necessarily fully before the Court for review, in explicit fulfillment of the Court's vested responsibility for primary consideration of the right administration of justice, the high calling of the law as a profession and complete subservience to the interest and protection of the general public.

That matters related to the disbarment, as well as professions of future conduct, are relevant and material, is recognized generally by the courts and a course of conduct corruptive of others is always of particular concern in a reinstatement proceeding.

"Little less than absolute assurance of a complete change of moral character is necessary to warrant reinstatement of an attorney disbarred for bribing a juror." (In Re Keenan [Mass.] 50 N. E. 2nd 785, 6th syllabus.)

In the case of Peart v. Jones, 159 Oh St 137, decided March 18, 1953, our Ohio Supreme Court adopted an extremely serious view of this applicant's proximity to attempted corruption, in its comment upon the personal presence of the same Thomas A. Joseph at the time a bribe offer was made to a juror by a restaurant proprietor, in the following language on page 142 of the opinion; to-wit,

"Some time prior to the trial of this case George Bryan was found guilty of attempted bribery of two witnesses in connection with the trial of one Thomas A. Joseph, an attorney. Bryan was then acting in behalf of Joseph. Peart, the plaintiff herein, was taken to the hospital immediately after the incident which gave rise to this cause. Joseph promptly appeared at the hospital in behalf of Peart and saw

Peart in the hospital three or four times. Joseph was present in the truck-stop restaurant when Bryan offered the bribe to Mrs. Kinnan. In view of these facts we can not agree with the Court of Appeals and plaintiff's counsel who characterize Bryan merely as a 'meddlesome stranger' or 'meddlesome outsider.' "

Individual expressions and opinions, however sincere and worthy, are no substitute for probity of knowledge and facts concerning past and prospective professional behavior and conduct and do not obviate or determine judicial judgment and decision. A disbarred lawyer may appear personally appealing to an acquaintance, neighbor, friend or private or public officer or employe and yet reveal to that person absolutely nothing concerning professional fitness, the qualities for which mostly lie beneath surface indications and ordinarily are not discernible to superficial outside observation.

The judge of this Court has the utmost sympathy for the personal plight of Thomas A. Joseph. But it would be a dereliction of public duty to allow ones-self to be swayed or controlled by another's personal predicament at the expense or sacrifice of public welfare.

"The effect of a judgment of disbarment will not be lightly set aside, and a mere sentimental belief that the erring lawyer has been punished enough does not justify his reinstatement, as the Court, on a petition for reinstatement, has a solemn duty to the legal profession and to the public which must be performed without regard to feelings of sympathy." (7 C. J. S. 815, Section 41a.)

Mr. Joseph was disbarred for very considerable cause, lengthily and extensively accumulated, vehemently denied and vigorously defended, he himself testifying therein without restraint of truth, afterward admitting wholesale perjury by himself in his own defense, although not until sharp and insistent cross-examination at this very reinstatement hearing, experiencing no occasion to admit or acknowledge wrongdoing until inescapably compelled to do so. Profession of reformation is thus refuted rather than proved.

When the established guilt of subornation of perjury before disbarment is followed by positive and direct perjury in trying to escape disbarment, not admitted or acknowledged until reinstatement hearing some time afterward, is it not expediency rather than principle, self-interest instead of public interest, that actuates and dominates the mind and purpose of such person?

Previously the Courts could not and would not condone or excuse the wrongful practices and precepts which Mr. Joseph perpetrated deliberately upon trusting and innocent victims of greedily conceived pervarication, falsification, rascality and criminality. These people were shamefully and ruthlessly exploited, a public wrong in the recorded annals of the administration of justice. The evidence was overwhelming and conclusive but it was all denied. There was no admission or acknowledgement of wrongdoing. On the contrary, there was a personal, perjured defense, as calculated and deliberate as the misconduct and crimes of moral turpitude that provoked disbarment in the first place.

How can protestation of reformation be believed or relied upon in the fact and face of dilatory and reluctant truthfulness?

Will the public wrong of a deliberately despicable assault upon the delicately balanced scales of justice in the practice of the honorable profession of the law be righted, in the public concern of regard and respect for the faithful administration of justice, by making a sacreligious mockery of the elemental duty of a sworn witness to tell "the truth, the whole truth and nothing but the truth," answerable to God, in a court of justice, by acting favorably upon the application for readmission of one who reaches no higher in his professional aspiration than only to consider and calculate the value of his answers to his immediate personal purpose, first, to avoid disbarment, and second, to effect reinstatement?

For the reasons hereinafter related this Court is unable to conclude that the applicant can safely be entrusted with helping safeguard the public interest in administering justice in accordance with established and accepted professional principles and practices.

To say "No" is not easy or pleasing. One feels pretty much alone at such times. And there may be many, judges among them, who would disagree with this Court's conclusion. It was suggested at the very time that Mr. Joseph was committing new perjury in the disbarment trial and emphasized and re-emphasized by his counsel in this proceeding that inasmuch as Mr. Joseph was and is a young man he should be given another opportunity if he shows that he understands his responsibilities as a lawyer. What greater responsibility has anyone, lawyer or layman, than to seek, reveal and acknowledge the truth willingly and voluntarily? What greater confidence is there upon which courts can rely and justice prevail than that of the ascertainment and assertion of fact and truth? Wherein lies justice if it cannot begin and conclude with the truth, as nearly as it is humanly ascertainable, particularly with God's help, invoked in the oath of a witness sworn to tell the truth, the whole truth and nothing but the truth?

Similarly, a court must understand, apply and discharge its paramount responsibility to require and enforce truth and truthful judgment or else trust and confidence in government itself will fall apart at the foundation seams.

Veracity is the cornerstone of virtue and virtue is the heart of integrity. Without integrity little else matters.

It is not sufficient in the profession and practice of law, as Mr. Joseph suggested in this hearing, that he merely lend himself to an appeal or reference in any questionable matters heretofore or hereafter arising. It is strictly incumbent upon a practicing lawyer that he be fully qualified to be entrusted privately with unquestionable rectitude, so that his every action and conduct be ethically correct in its original occurrence. The concern of clients and of all other affected persons, whether in or out of litigation, should proceed from a solid promise of unquestionable integrity at the very outset, without resort to censorship. Responsibility is not delegated or conditioned. It is accepted and performed or it simply does not exist. It is an intangible but none the less integral and basic qualification, not expressed in words but performed by deed and conduct implicit in the professional life and habit of the individual lawyer.

This Court simply cannot say that it has an abiding confidence in the inherent integrity of Thomas A. Joseph or that he can be entrusted with the personal and professional responsibility of helping protect and safeguard the public interest with relation to the right administration of justice.

The Court of Appeals of our neighboring state of Kentucky, in In Re Stump, 114 S. W. 2nd, 1094, in the language of its opinion on page 1097, has stated the rule of a reasonable burden upon an applicant for reinstatement, as follows:

"The malpractice of one reflects dishonor not only upon his brethren, but upon the Courts themselves, and creates among the people a distrust of the courts and the bar. Therefore, one proven to have violated those conditions of good behavior and professional integrity annexed to the granting of the privilege of practicing law, by applying for restoration, has the burden of overcoming by persuasive evidence the former adverse judgment on his qualification."

Mr. Joseph has failed to sustain the burden of proof required by law and should not be reinstated.

The exhorbitant exactions procured from the estate and individual heirs in the Miller matter, still sought to be justified in the reinstatement hearing, altogether out of any reasonable proportion to services rendered, were falsely founded on the predicate of a probate court order unjustifiedly prepared, presented and procured, simply because it was obtainable, and bore no semblance of responsible accountability either to the estate or to the heirs, all of whom, estate, heirs and court, were unwitting dupes in avaricious hands, with essential integrity wholly lacking.

The unconscionable handling of the client and her real estate in the Watts matter, protestingly reaffirmed and reiterated in the reinstatement hearing, was an unwarranted, inexcusable and predatory advantage of a frustrated, unhappy and helpless elderly woman, whose temporary marital difficulty, acutely aggravated by Mr. Joseph's actions, seemingly presented an occasion and opportunuity for unearned enrichment by wanton violation of personal trust, that directly contradicted and repudiated a strictly fiduciary relationship and was outrageously unprofessional in every aspect, including an extortionate charge and collection.

The attempted guise and veneer of artificial respectability sought to be applied by the applicant in the foregoing and other matters around deliberate and purposeful misconduct, at the times of perpetration, at the disbarment trial and at the hearing for reinstatement, were a shameful shambles behind which he sought to find righteous refuge.

Civil actions for separate redress, far from expiating the original sin, simply illustrate the underlying intransigent indisposition of Mr. Joseph to offer restitution voluntarily or even to comply willingly or without capitulation to his own terms, retaining and utilizing every advantage wrongfully secured.

Acknowledgment is made of the able, faithful and forthright presentation, in evidence and argument, by counsel for both applicant

and public, all equally actuated by sincere and earnest belief and conviction.

Application for reinstatement of Thomas A. Joseph to the profession and practice of law in Ohio is denied, at his costs, and he is granted exceptions thereto.

Payment is allowed and ordered in the sum of One Hundred Dollars ($100.00) to each of counsel in behalf of the public, Donald P. Jones, J. Lincoln Knapp and C. Alfred Zinn.