Jerry L. HORN, Movant,

v.

**KENTUCKY BAR ASSOCIATION, Respondent.**

No. 2001–SC–0454–KB.

Supreme Court of Kentucky.

Dec. 19, 2002.

7. *Tharp v. Commonwealth,* 40 S.W.3d 356, 364 (2001).

8. *Id.* at 370 (Keller, J., concurring).

9. *Id.* at 369 (Keller, J., concurring).

**84**

Jerry L. Horn, Lexington, for Movant.

Bruce K. Davis, Executive Director, Kentucky Bar Association, Jane H. Herrick, Kentucky Bar Association, Frankfort, Ronald M. Hayes, Kentucky Board of Bar Examiners, Lexington, for Respondent.

## OPINION AND ORDER DENYING REINSTATEMENT

Jerry L. Horn of Lexington, Kentucky (KBA # 8628) seeks reinstatement to the Kentucky Bar Association pursuant to SCR 3.510 following a five-year suspension.

The suspension of Horn stemmed from his involvement in persuading a West Virginia church to invest in a "pyramid" or "ponzi" scheme which resulted in the church losing an investment of over $199,800. On July 30, 1996, Horn and his co-conspirators were convicted by a federal jury of conspiracy to commit interstate transportation of money taken by fraud in violation of 18 U.S.C. § 2314; interstate transportation of money taken by fraud in violation of 18 U.S.C. § 2 and aiding and abetting in violation of 18 U.S.C. § 2. Horn was sentenced to twelve months in prison and ordered to pay a fine of $3,000 and restitution in the amount of $134,905.

Upon conviction, Horn was automatically suspended from the practice of law in Kentucky. SCR 3.166(1). This Court issued an opinion and order on November 18, 1999, affirming the guilt of Horn and accepting the KBA recommendation of a five-year suspension which would run from the date of the automatic suspension. *See Kentucky Bar Association v. Horn,* Ky., 4 S.W.3d 135 (1999).

Horn filed an application for reinstatement on June 7, 2001. After conducting an investigation, the Character and Fitness Committee held a hearing, received evidence, and made findings, conclusions and a recommendation that Horn not be reinstated.

The Board of Governors of the Kentucky Bar Association voted 9–7 to reinstate Horn with one member abstaining. In so voting, the Board noted that it was mindful of the recent precedent in *Hubbard v. Kentucky Bar Assn.,* Ky., 66 S.W.3d 684 (2001), which permitted reinstatement even though the applicant had significant income and had not made any effort to pay court ordered restitution. The Board stated that Horn at least paid some restitution before he chose to discontinue the payments.

The Board of Governors believed that Horn could return to the practice of law on a conditional basis and listed the conditions as follows:

1) Horn must pay the arrearages of his restitution in the amount of $2,500 plus 8% interest within 30 days of reinstatement;

2) Horn must continue to timely pay all payments required by the United States District Court for the Southern District of West Virginia; and

3) Horn must submit proof to bar counsel on a quarterly basis showing that all payments required by the United States District Court for the Southern District of West Virginia are current.

The seminal case for reinstatement in Kentucky is *In re Stump*, 272 Ky. 593, 114 S.W.2d 1094 (1938). That case set forth four factors concerning reinstatement, one being that the applicant must understand the serious nature of his previous misconduct and should at least manifest a sense of wrongdoing. This theme has been repeated in a number of Supreme Court decisions on the question.

A more recent reinstatement case, *Greene v. Kentucky Bar Assn.* Ky., 904 S.W.2d 233 (1995), demonstrated several fundamental differences among the Board, the Character and Fitness Committee and the Supreme Court about whether an attorney was truly rehabilitated. It was also the first case to offer an extensive analysis of the applicant's financial history and total situation. In *Greene*, the attorney had been disbarred in 1974 after his guilty plea to mail fraud. He had bilked 26 investors of over $250,000 in a fraudulent investment scheme. By 1979, Greene had repaid only $105,000 and sought reinstatement. His application for reinstatement was denied. Later he filed a second application which he withdrew voluntarily. After Greene filed bankruptcy, he submitted his third application in 1992. At that time, he had not made any payments to investors since 1988 claiming he had been unable to pay because he had tax liabilities and other responsibilities. In 1994, Greene proposed a repayment plan which would have required 30 years to complete the payments.

The Character and Fitness Committee recommended reinstatement. The Board, however, voted 10 to 7 against reinstatement. This Court drew a distinction between intentional disregard for financial obligations and apparent financial incompetence and ultimately reinstated Greene by a 6 to 1 vote. Justice Wintersheimer dissented because Greene had not indicated any realistic rehabilitation plan.

The majority holding in *Greene*, that it was the court's responsibility to examine the fiscal credibility of an applicant as an element of good character, was cited in *Faust v. Kentucky Bar Assn.*, Ky., 929 S.W.2d 185 (1996). Faust offered a financial plan. He also suffered from problems with alcohol and had been convicted for DUI on at least four occasions, as well as being charged with felony nonsupport four times. Nevertheless, the Court granted Faust conditional reinstatement.

A different result was reached in *Baldridge v. Kentucky Bar Assn.*, Ky., 980 S.W.2d 558 (1998). The Board unanimously voted against reinstatement and this Court denied the reinstatement.

In this case, the Character and Fitness Committee focused on three questions: (1) whether Horn complied with the suspension order; (2) whether Horn "presently possesses sufficient professional capabilities and qualifications" to practice law; and (3) whether Horn is of "good moral character."

The Character and Fitness Committee determined that Horn complied with the order of suspension and that he presently possesses sufficient professional capabilities and qualifications to practice law. The Board agreed with these two factors.

The final inquiry is whether Horn is of "good moral character." The same standards which apply to reinstatement after disbarment apply to reinstatement after

suspension. *In re Cohen,* Ky., 706 S.W.2d 832 (1986). An applicant for reinstatement to the practice of law bears the burden of demonstrating that he has "so rehabilitated himself that in spite of his past failings ... he [has] become worthy of trust and confidence and would be a credit not a detriment to the profession of law." *In re Applewhite,* Ky., 401 S.W.2d 757 (1965). "We 'must be cognizant of the responsible position a lawyer occupies in the community.'" *Faust, supra, quoting In re Cohen, supra,* at 834.

Here, the Character and Fitness Committee, after hearing all of the testimony and reviewing the record, determined that Horn failed to show by clear and convincing evidence that he is of good moral character. In reaching its decision the Committee cited the following facts:

1. Horn was ordered by the Court to pay $125,978.52 in restitution.

2. After the order was entered he negotiated an agreement with the federal government to pay $100 a month.

3. Horn unilaterally chose to breach the agreement and to discontinue payments as of January 2000.

4. Horn acted without attempting to contact the appropriate authorities to explain his action or work out an alternative payment arrangement.

5. During the period following incarceration Horn has paid $60 a month for a YMCA membership for himself.

6. During the period since incarceration Horn briefly became involved with yet another multi-level marketing program and invested $1,000 in it.

7. Horn could have paid the $100 per month payment or made another agreement to reduce his payment obligation.

Based on these facts the Committee reasoned that Horn did not evidence fiscal responsibility since his suspension; that he did not follow rules and regulations since his suspension and that his conduct since his suspension has not been exemplary. It concluded that Horn failed to provide clear and convincing evidence that he has so rehabilitated himself that he is again worthy of public trust and confidence.

The Board of Governors concluded otherwise and recommended that Horn be reinstated. However, other than citing to our decisions in *Hubbard, supra,* and *Faust,* the Board expressed no significant grounds for its recommendation that Horn be reinstated.

We must observe that in *Hubbard,* this Court stated that the Character and Fitness Committee had the responsibility of determining good moral character and that the Committee had conducted an extensive background investigation and had recommended reinstatement. The majority opinion and the concurring opinion also noted the absence of any proof by the Board of Governors to rebut the recommendations of the Committee.

Under all the circumstances, we are persuaded by the comprehensive report of the Character and Fitness Committee that Horn has not met his burden for reinstatement. Accordingly, the application of Jerry Horn to be reinstated to the practice of law is denied. Horn shall pay the costs incurred by the Kentucky Bar Association in the amount of $672.93.

COOPER, GRAVES, JOHNSTONE, STUMBO and WINTERSHEIMER, JJ., concur.

LAMBERT, C.J., would grant reinstatement.

KELLER, J., did not sit.

ENTERED: December 19, 2002.

/s/ Joseph E. Lambert
Chief Justice