KENTUCKY BAR ASSOCIATION,
Movant

v.

KUNGU NJUGUNA, Respondent.

No. 2012-SC-000755-KB.

Supreme Court of Kentucky.

March 21, 2013.

As Modified on Denial of Reconsideration
Aug. 29, 2013.

## OPINION AND ORDER

The Board of Governors of the Kentucky Bar Association (KBA) has recommended that Kungu Njuguna be found guilty of two charges of misconduct and be suspended from the practice of law for 180 days with 90 days of that suspension probated on several conditions. The KBA's Office of Bar Counsel has sought review of the recommendation to this Court under SCR 3.370(7), and has asked that Njuguna be suspended for 181 days without probation.

Njuguna was admitted to the practice of law in the Commonwealth of Kentucky on October 6, 2003; his KBA member number is 89932; his bar roster address is 17323 Curry Branch Road, Louisville, Kentucky 40245.

This is a consolidated disciplinary case arising from two one-count charges. The first count charged Njuguna with violating SCR 3.130–8.3(b),[1] which makes it professional misconduct for a lawyer "to commit a criminal act that reflects adversely on a lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." The second count charged a violation of SCR 3.130–8.4(c), which states "it is misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

The first count arose out of events occurring on January 10, 2009, in which Njuguna argued with his then girlfriend and now wife. He got into his car and the then girlfriend ended up on the hood of the car as he drove away. Njuguna was charged with second-degree wanton endangerment (class A misdemeanor), second-degree fleeing and evading police (class A misdemeanor), and disorderly conduct (class B

---

1. Njuguna was charged under the ethical rules in effect before July 15, 2009.

misdemeanor). He later pleaded guilty to the charges, admitting that he had been intoxicated at the time and stating that the charges were directly related to an argument with his then girlfriend. He admitted that he had consumed between 12 and 18 beers that night. As a result of his conviction, Njuguna was sentenced to 12 months in jail, conditionally discharged with the stipulation that he complete an alcohol treatment program and an anger management course.

The charge related to these offenses was issued in December 2009. Njuguna filed a response admitting to pleading guilty to the misdemeanor offenses. In April 2010, before a hearing could be held on this charge, Njuguna filed a motion to withdraw from membership in the KBA. The motion falsely stated that Njuguna was "an active member in good standing and that no disciplinary investigations, complaints or charges were ... pending against [him]." This false statement led to the second charge against Njuguna.

In a letter to the KBA, he explained the circumstances of the false statement as follows:

> While in an intoxicated state during a heated argument with my spouse, I pulled out the motion, signed it and mailed it. I did all of this at three o'clock in the morning. The fact that I was intoxicated is not an excuse, just a fact. It does not excuse that I signed a document that was a falsehood.

At some point after pleading guilty to the misdemeanor charges, Njuguna had contacted the Kentucky Lawyer Assistance Program (KYLAP) and entered into a supervision agreement. Also at some point after the misdemeanor charges, Njuguna had also been charged with a DUI first offense. In September 2010, he pleaded guilty to that offense.[2] Just ten days later, he was arrested on DUI second offense when he stopped his car in the middle of Shelbyville Road at 12:30 a.m. after having attended a wedding with his wife, with whom he was arguing.

The two professional misconduct charges were consolidated and a hearing was held before a trial commissioner in November 2011. In the hearing, Njuguna admitted to the misconduct in both charges. By the time of the hearing before the trial commissioner, Njuguna had been noncompliant with his KYLAP agreement and had not met with his sponsor for about a year. At the hearing, the trial commissioner expressed concern that Njuguna had tried to handle his drinking problem on his own rather than attending AA meetings or otherwise seeking help.

The trial commissioner found Njuguna guilty on both counts and found, as a matter of fact, that Njuguna "has suffered and continues to suffer from alcohol abuse." The trial commissioner recommended that Njuguna be suspended for 181 days, be required to agree to a five-year monitoring program with KYLAP, and pay the costs of the proceedings.

Njuguna appealed the findings to the Board of Governors. Before the Board could meet to consider the case, however, the KBA's Office of Bar Counsel moved to supplement the record with evidence that Njuguna had been arrested on August 12, 2012 for DUI third offense. These records show that Njuguna's blood alcohol concentration was .229 at the time of the arrest. Njuguna had not reported this arrest to the KBA. He pleaded guilty to the offense in October 2012.

---

**2.** Although this was a first-offense charge, he admitted that he had pleaded guilty to a DUI in Lexington in 2000 or 2001.

The Board considered the trial commissioner's record and the supplemental proof at a meeting on September 14, 2012. The Board voted unanimously, 18 to 0, to find Njuguna guilty of both charges. In turning to the question of discipline, the Board considered the fact that Njuguna had no other disciplinary charges or complaints other than those at issue in this case. The Board also noted that "it is clear ... that Mr. Njuguna has had a long-standing and continuing serious problem with alcohol abuse." In light of that, the Board recommended a 180–day suspension with 90 days to be probated for five years with the conditions that Njuguna enroll in a 30–day inpatient treatment center for alcohol abuse and an anger management program, that he execute and completely fulfill a five-year contract with KYLAP, that he not have any more convictions for violating state or federal laws, and that he report any other convictions.

The KBA's Office of Bar Counsel was not satisfied with the Board's recommendation and sought review of the decision by this Court under SCR 3.370(7). As required by that rule, the KBA has laid out "reasons for review." These consist primarily of the argument that the trial commissioner reached the appropriate sanction because, according to the KBA, Njuguna, "over the course of almost four years, has repeatedly demonstrated his inability to conform his conduct to the requirements of the Rules and law and control his drinking." The KBA also notes that a 181–day suspension would require Njuguna to go through the reinstatement process laid out in SCR 3.510, which would require approval of the reinstatement by the Character and Fitness Committee. The KBA also complains that the Board did not explain why it deviated from the trial commissioner's report, despite a rule requiring it to "state, in its written report ..., the difference between its findings and recommendations and the report of the Trial Commissioner." SCR 3.370(5)(a)(ii). The KBA also argues that the Board's recommendation, if carried out, would send the wrong message to the public and the profession, and that other attorneys have received significant suspensions for misdemeanor convictions. *See, e.g., Grigsby v. Kentucky Bar Ass'n,* 181 S.W.3d 40 (Ky.2005).

Despite the KBA's argument, this Court sees no reason to depart from the Board of Governors' recommendation. While the Rules technically require that the Board state the difference between its findings and recommendation and the trial commissioner's, that does not require, as the KBA suggests, a lengthy dissertation and explanation for the differences. Under the rule in question, SCR 3.370(5)(a)(ii), the Board undertakes *de novo* review, which by definition allows it to proceed without any deference to the trial commissioner. The requirement of showing the differences (which the Board did here by noting what the trial commissioner recommended and by then recommending something different) is to allow this Court to see the different findings that have been made. The KBA cites to language from *Hubbard v. Kentucky Bar Ass'n,* 66 S.W.3d 684, 695 (Ky.2001), in which this Court complained that a board had "failed to give a reasoned and rational explanation for its rejection of the recommendation[;]" however, the recommendation in *Hubbard* was from the Character and Fitness Committee, not a trial commissioner. Therefore the *Hubbard* language does not bind the Board of Governors in its review of a trial commissioner's recommendation because in those cases our rules expressly allow the Board of Governors to engage in a de novo review. See SCR 3.370(6) ("The Board shall decide, by a roll call vote, whether the decision of the Trial Commissioner as to

the finding of a violation and degree of discipline imposed is supported by substantial evidence or is clearly erroneous as a matter of law. The Board, in its discretion, may conduct a review de novo of the evidence presented to the Trial Commissioner."). *C.f.* SCR 2.060 ("The decision of the Character and Fitness Committee as to the eligibility of an applicant for admission to the Bar of this state shall be final unless, on motion by the applicant filed within 30 days after notice of an adverse decision has been mailed to applicant's last known address, the Supreme Court upon review of the record overrules such decision.").

Moreover, the cases cited by the KBA do not suggest that the 180–day suspension is inappropriate. For example, in *Grigsby*, the lawyer was convicted of misdemeanor possession of a controlled substance. The Board recommended a 61–day suspension probated for two years. 181 S.W.3d at 42. This Court took review because the Board's recommended sanction was too low, in part because of the nature of the offense and the lawyer's failure to enter KYLAP. *Id.* But the Court imposed only a 180–day suspension, with only 61–days to serve and the rest probated for the remainder of a two-year KYLAP supervision.

Here, the Board has actually recommended a more severe sanction, since Njuguna will have to serve 90 days of suspension and has a longer probation period. He also has more strenuous conditions on that probation than the lawyer in *Grigsby*.

This Court thus deems it appropriate to adopt the recommendation of the Board of Governors, rather than imposing the more severe sanction recommended by the Office of Bar Counsel. It is apparent that the Board believed that requiring Njuguna to go through the reinstatement process was not the best way to discipline him or to nudge him toward getting help for his alcohol abuse problem. Instead, the Board's recommendation focuses on Njuguna's treatment, which includes in-patient treatment and a lengthy KYLAP supervision, and thereby recognizes that his alcohol abuse had a large role in his misconduct.

### Order

ACCORDINGLY, IT IS ORDERED THAT:

1. Kungu Njuguna is found guilty of the above-described and admitted violations of the Rules of Professional Conduct.

2. Njuguna is suspended from the practice of law in the Commonwealth of Kentucky for 180 days. Ninety days of that suspension is probated for five years on conditions that Njuguna:

   a. enroll in a 30–day inpatient treatment center for alcohol abuse;

   b. enroll in a KYLAP-approved anger management program;

   c. execute and completely fulfill a five-year contract with KYLAP, including regular attendance at AA meetings;

   d. not be convicted of violating any state or federal laws; and

   e. if convicted of violating any state or federal laws, report that fact to the KBA's Office of Bar Counsel.

3. In accordance with SCR 3.450, Njuguna is directed to pay all costs associated with these disciplinary proceedings against him, said sum being $1,325.54, for which execution may issue from this Court upon finality of this Opinion and Order.

4. In accordance with SCR 3.390, Njuguna shall notify, by letter duly placed with the United States Postal

Service, all courts or other tribunals in which he has matters pending, and all clients of his inability to represent them and of the necessity and urgency of promptly retaining new counsel. He shall simultaneously provide a copy of all such letters of notification to the Office of Bar Counsel. He shall immediately cancel any pending advertisements, to the extent possible, and shall terminate any advertising activity for the duration of the term of suspension.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, NOBLE, SCOTT and VENTERS, JJ., sitting. All concur.

ENTERED: March 21, 2013.

/s/ John D. Minton, Jr.
   Chief Justice.