TO BE PUBLISHED

# Supreme Court of Kentucky

2025-SC-0192-KB

IN RE: TRAVIS OLEN MYLES, JR.

IN SUPREME COURT

## **OPINION AND ORDER**

Travis Olen Myles, Jr., Kentucky Bar Association ("KBA") Member Number 87300, was admitted to the practice of law in the Commonwealth of Kentucky on October 2, 1998. His bar roster address is 1009 Dixon Avenue, Louisville, Kentucky 40217.

Myles has applied for reinstatement to practice law in the Commonwealth of Kentucky. In 2009, he received a 181-day suspension, with 11 days probated for a period of five years. In 2012, his probation was revoked, resulting in an additional 151-day suspension. In 2013, he received a public reprimand. In 2014, he faced another 61-day suspension.

Myles did not apply for reinstatement until March 27, 2023 (approximately nine years after his most recent suspension). After the conclusion of the investigation by the Office of Bar Counsel ("OBC"), for which extensions had been granted, an evidentiary hearing was held before the Character and Fitness Committee on October 29, 2024. Following the hearing, the parties were given time to review the transcript and file memoranda of law in support of their respective positions.

The Character and Fitness Committee has recommended that Myles not be reinstated. Myles has not filed any notice of appeal to the Board of Governors. After careful consideration, we decline[1] to conduct further review and adopt the decision of the Character and Fitness Committee in all respects. SCR 3.370(10) ("If no notice of review is filed by either of the parties, or the Court under subsection (8) of this rule, the Court shall enter an order adopting the decision of the . . . Character and Fitness Committee . . . relating to all matters").

The Court incorporates the Character and Fitness Committee's findings, conclusions, and recommendations, as follows:

> A reinstatement applicant has the burden of proving by clear and convincing evidence that [he] possesses the requisite character, fitness, and moral qualifications for re-admission to the practice of law. SCR 3.503. Using the clear and convincing standard of proof, the Committee is to consider the following factors: 1) the nature of the misconduct for which the applicant was suspended; 2) whether the applicant has complied with every term of the order of suspension; 3) whether the applicant can show that [he] is worthy of the trust and confidence of the public; 4) whether the applicant possesses sufficient professional capabilities to serve the public as a lawyer; 5) whether the applicant presently exhibits good moral character; 6) whether the applicant appreciates the wrongfulness of [his] prior professional misconduct; 7) the applicant's previous and subsequent conduct and attitude toward the courts and the practice; 8) the time elapsed since applicant's suspension; and 9) the applicant's candor in the reinstatement process.

---

[1] We note, however, this Court retains the authority to review the Character & Fitness Committee's decision notwithstanding the failure of either party to appeal. Supreme Court Rule ("SCR") 3.370(9).

2

1. The Nature of the Misconduct for which the Applicant Was Suspended:  The applicant had three separate Supreme Court cases in which he received discipline. Those cases dealt with the improper use of his escrow account, failing to reasonably respond to clients' requests for information or their files, failure to honor his partnership agreement with [Sydney] Hanish, and failing to timely prosecute claims on behalf of clients, including missing important deadlines.

Myles testified that when he was in private practice, he was overwhelmed and did not appropriately handle the administration of his business, especially in dealing with clients and cases.  He testified that he would agree not to go back to private practice if he was reinstated.  Although it is not clear whether this Committee would have the ability to recommend the prohibition of re-entering the private practice of law as a condition of reinstatement, if this Committee cannot trust Myles to represent clients in private practice, it is nonsensical to recommend him for reinstatement for an in-house counsel position or for government employment and still have the powers inherent with bar membership.

2. Whether the Applicant Has Complied with Every Term of the Order of Suspension:  This element provides the biggest barrier to Myles' request for reinstatement.  Myles has acknowledged that he has not complied with [this Court's] mandate to repay his former partner's estate the sum of $53,220.31 plus interest. [This Court] ordered him to make the [installment] payments with the balance paid in full by October 23, 2013.  By his own admission, Myles did not comply with this mandate.  He proferred no evidence of even a single payment during the 4 ½ -year timeframe provided by the Court or in the 12 years since the deadline expired.  His only testimony was that he may have made one small payment, but he had no evidence of that payment and could not testify as to the amount.

In his reinstatement application, Myles attempts to avoid the application of [this Court's] Order by claiming that the judgment's statute of limitations had expired and that the claim had been waived by the widow's estate by the executor not claiming it as an

3

asset within the probate inventory. [Footnotes omitted.] Neither of these defenses releases Myles from [this Court's] mandate that he make this payment. The payment was to be made before the end of the probationary period. It was not. Even if all the other elements were in Myles' favor, which they are not, the Committee believes that Myles' failure to comply with [this Court's] Order alone is a bar to his reinstatement application.

3. Whether the Applicant Can Show that [He] is Worthy of the Trust and Confidence of the Public: Myles' conduct as it pertains to his employer, the Social Security Administration [SSA], is likewise troubling. The October 24, 2024, correspondence from SSA's Designated Agency Ethics Official, Dawn Wiggins, shows a pattern of dishonesty by Myles with respect to his employer. When he was hired in May 2009, Myles failed to inform his employer that he was no longer a lawyer in good standing with the Kentucky Bar Association due to his suspension in April 2009. Surprisingly, his employer did not discover this for 11 years. However, when his employer discovered that he was not in good standing, they gave him an immediate order to seek reinstatement. Myles not only ignored this directive for two years, he also lied to his employer on several occasions regarding his efforts to seek reinstatement. He intentionally misrepresented to SSA that he had applied for reinstatement in 2021 when, in fact, he had not.

Simply put, Myles had a duty to inform his employer that he was not a member in good standing prior to him taking a job with SSA that required him to be an attorney in good standing, and he had an ongoing duty to inform SSA of his suspension, none of which he did.

At the evidentiary hearing before the Committee, when asked what his job title was, Myles told the Committee he was "an opinion writer" for SSA. He was less than forthcoming with the Committee on whether that job required him to have an active bar license while performing those job duties. In fact, he testified his job could be done either by an attorney or paralegal. Fortunately, the receipt of the post-hearing

4

correspondence from SSA provided clarity on that issue and revealed that only an attorney in good standing could hold that position, unveiling Myles' dishonesty whether overt or by omission. Accordingly, it does not appear Myles is worthy of the trust and confidence of the public to warrant reinstatement.

4. <u>Whether the Applicant Possesses Sufficient Professional Capabilities to Serve the Public as a Lawyer:</u> By Myles' own admission referenced above, he is not capable of serving the general public as a lawyer. He did express a desire to continue working for SSA in his current position. He stated he could receive promotions if he was reinstated as an attorney. As it turns out, he should not even be serving in his current job unless he is an attorney in good standing. If SSA wants to ignore its own job prerequisite and retain Myles in his current position, then that is their prerogative. Nevertheless, the Committee cannot ignore Myles' lack of candor as it relates to his employer for reinstatement. Considering his dishonesty, it does not appear the applicant possesses sufficient professional capacity to serve the public as an attorney.

5. <u>Whether the Applicant Presently Exhibits Good Moral Character:</u> It does not appear Myles exhibits good and moral character in light of the facts referenced in the prior elements, which need not be restated here.

6. <u>Whether the Applicant Appreciates the Wrongfulness of [His] Prior Professional Misconduct:</u> While Myles testified that he appreciated the wrongfulness of his professional misconduct and was sorry for how he had failed to communicate with his clients, his dishonest conduct in dealing with his current employer suggests that Myles truly does not appreciate the wrongfulness of his conduct. Even after his suspension, he made numerous material misrepresentations to his employer and this Committee. This element does not weigh in the applicant's favor.

5

7. The Applicant's Previous and Subsequent Conduct and Attitude Toward the Court and the Practice: Evidence submitted by Myles that does weigh in his favor is his favorable employment evaluations. In his supplemental evidence, Myles received [favorable] evaluations for his work as an Attorney Advisor for SSA. Furthermore, other than his misconduct regarding reinstatement, he appears to have been a model employee. There also have not been any significant criminal actions against him since his suspension. Nevertheless, his dishonesty in dealing with his employer regarding his alleged efforts to get reinstated is still troubling, as is his failure to comply with [this Court's] Order entered in 2009.

8. The Time Elapsed Since Applicant's Suspension: It has been 11 years since the expiration of Myles' last suspension. Normally the passage of such time would work in the applicant's favor, but in this case, it has the opposite effect. Even though an additional 11 years have passed since the payment deadline has expired, Myles still has not repaid the money ordered by [this Court]. Accordingly, the passage of time weighs against Myles in that he still has not complied with [this Court's] directive.

9. The Applicant's Candor in the Reinstatement Process: It is clear that Myles was not candid to the Committee during the evidentiary hearing regarding his employment with SSA. He certainly was not candid with his employer regarding his status with the Kentucky Bar Association. This factor weighs heavily against Myles' attempt for reinstatement.

**CONCLUSION**

The requisite character, fitness, and moral qualifications for readmission to the practice of law are outlined in SCR 3.503. Failure of an applicant to establish the requisite standards by clear and convincing evidence is enough to deny an application for reinstatement. *Wade v. Kentucky Bar Ass'n*, 605

6

S.W.3d 329, 331-32 (Ky. 2020). Myles failed to establish that he met these criteria. Even if he met the requirements, his failure to follow this Court's order to repay the Hanish estate prevents his reinstatement. *Turner v. Kentucky Bar Ass'n,* 78 S.W.3d 134, 136 (Ky. 2002); *Horn v. Kentucky Bar Ass'n,* 92 S.W.3d 83, 86 (Ky. 2002).

ACCORDINGLY, it is hereby ORDERED as follows:

1. The application of Travis Olen Myles, Jr., for reinstatement to the practice of law is DENIED.

2. Under SCR 3.450, Myles shall pay all costs associated with the investigation and prosecution of this proceeding, totaling $4,396.99[2], for which execution may issue from the Court upon finality of this Opinion and Order.

All sitting. All concur.

ENTERED: August 14, 2025.

_____
CHIEF JUSTICE

---

[2] The KBA certified costs in the amount of $3,524.71 and the Office of Bar Counsel certified costs in the amount of $872.28.

7