Jan Schurch SCHOLL, Movant,

v.

KENTUCKY BAR ASSOCIATION,
Respondent.

No. 2004–SC–000183–KB.

Supreme Court of Kentucky.

Feb. 22, 2007.

## OPINION AND ORDER

Movant, Jan Schurch Scholl, whose bar roster address is listed as 3320 Bardstown Road, Louisville, Kentucky 40218, requested reinstatement to the practice of law pursuant to SCR 3.510(3) on March 5, 2004. After concluding its investigation and conducting a full evidentiary hearing relating to Scholl's request for reinstatement, the Kentucky Bar Association Character and Fitness Committee concluded that Scholl did not possess the requisite character, fitness, and moral qualifications for readmission to the practice of law and recommended his application for reinstatement be denied. By a unanimous vote of 15–0, the Board of Governors denied Scholl's reinstatement application and adopted the report of the Committee in its entirety. For the reasons set forth herein, we agree with the findings and conclusions of the Character and Fitness Committee and order that Scholl's application for reinstatement be denied.

### Facts

In October 1983, Scholl was indicted in the Jefferson Circuit Court for theft by failure to make the required disposition in the amount of $4,700. One of Scholl's former clients had transferred the funds to Scholl so that Scholl could pay certain financial obligations on behalf of the client; however, Scholl diverted the funds to his

own personal use. Following his indictment, Scholl was temporarily suspended from the practice of law by this Court on October 26, 1983, after the Kentucky Bar Association (KBA) Inquiry Commission charged Scholl with unethical conduct involving misappropriation of client funds. Additionally, the KBA charged Scholl with misappropriation based on complaints from five other individuals who each paid Scholl $500 for legal services they did not receive and who were unable to recover the fees they had paid.

In March 1985, Scholl entered a guilty plea to the criminal charges and received a probated five-year sentence and was required to pay restitution to his former client. Then, on June 13, 1985, this Court granted Scholl's motion to resign from the practice of law under terms of disbarment.

Since his resignation, Scholl has sought reinstatement to the practice of law on one other occasion. His first application for reinstatement was submitted on March 17, 1992, and a hearing was held before the Character and Fitness Committee concerning that application on November 12, 1993. Scholl subsequently asked the Committee to hold his application in abeyance in order to give him an opportunity to gather proof of financial restitution to his aggrieved former clients. Scholl, however, failed to gather this additional information, and, on March 5, 1996, the Character and Fitness Committee recommended to the KBA that his application for reinstatement be denied. In September 1996, Scholl entered a motion before this Court to withdraw his 1992 reinstatement application and such was granted by order of this Court on October 17, 1996. In March 2004, Scholl submitted his current application for reinstatement.

### Recommendation of the Character and Fitness Committee

In its Recommendation, the Character and Fitness Committee (Committee) found that Scholl has complied with the provisions of this Court's Suspension Order dated June 13, 1985, which had incorporated SCR 3.390, requiring Scholl to notify all courts in which he had matters pending and all clients for whom he was actively involved in legal matters of his suspension and his inability to continue to represent clients. The Committee also found that Scholl had completed the requisite number of CLE courses to satisfy the requirements for reinstatement at the time he filed his application for reinstatement in 2004 and that Scholl has demonstrated a degree of professional capability through his involvement with the Henry Penner Foundation [1] and his compliance with regulatory requirements for over-the-road truck driving.[2]

Despite these findings, the Committee voiced concern that "in over a twenty year period of time, Mr. Scholl has not been able to devise a method and follow through with his alleged intentions to repay the former clients he injured financially." The Committee felt that such a remedy should occur before any individual seeks to re-enter the practice of law. Moreover, the

---

1. The Henry Penner Foundation is a non-profit organization that helps disabled children communicate through computers. According to the Committee's Findings of Fact, Scholl became involved with the Foundation after he met Mr. Henry Penner in 1996 and, in exchange for the use of Penner's one-bedroom condominium, Scholl oversaw the business side of the Foundation.

2. Scholl indicated during his hearing before the Committee in 2004 that he had been employed for the previous six years as an over-the-road truck driver for Carnes Trucking, and prior to that, he had worked for Ryder Trucking for approximately two years.

Committee found that, although Scholl's involvement with the Penner Foundation is a positive factor in assessing his moral character, it was nonetheless troubled by the fact that Scholl has admitted to being financially stable for several years, but has yet to repay his former clients the money he took from them. Furthermore, the Committee was not persuaded by Scholl's claim that he needed a "structured mechanism" in order to repay his former clients. Thus, the Committee concluded that Scholl is not worthy of public trust and confidence while he refuses or neglects the issue of repaying former clients.

The Committee was also troubled by allegations that Scholl was or is not current in his child support obligations on behalf of his only biological child, Ian Scholl. Although the Committee notes that Scholl alleges some direct payments to Ian Scholl's mother, some payments through an attorney, and some in-kind payments, the Committee nonetheless notes that Scholl does not appear concerned about whether he has fulfilled his legal and moral obligations to support his child and cannot state whether or not he is, or ever has been, current on this obligation. In particular, the Committee found that Scholl has given complete discretion to Ian's mother concerning whether or not Ian should be included in distributions from a trust, which was created by Scholl to benefit himself, Ian, and two step-daughters.

Pursuant to SCR 2.300(6)(e), the Committee found that, although Scholl expressed a degree of remorse for his actions and recognized that his actions were wrong, Scholl has yet to provide any evidence of restitution. Further, the Committee concluded that Scholl has not been completely candid at all times during the reinstatement proceedings. As evidence, the Committee points to Scholl's testimony wherein he mentioned the trust he created in 1988 with only the three children as beneficiaries. Yet, on cross-examination it was discovered that Scholl is also a beneficiary of that trust. Thus, Scholl has not shown the Committee, or this Court, that he has been rehabilitated in the area of fiscal responsibility.

### Conclusions

 Though the doors to the practice of law are never permanently closed on a disbarred attorney, this Court owes a duty to the legal profession as well as the general public to ensure that if the doors are opened, it is done so as a matter of justice. *See In re Stump*, 272 Ky. 593, 114 S.W.2d 1094, 1096 (1938). This Court must equally be aware that the readmission of a previously disbarred attorney carries with it the duty of the Court to protect itself against the readmission of "an officer who cannot command trust and confidence." *Id.*

Thus, where an attorney, proven to have violated our rules regarding professional conduct, seeks to be readmitted to the practice of law, he bears the burden "of proving by clear and convincing evidence that he[ ] possesses the requisite character, fitness and moral qualification for readmission[.]" SCR 2.300(6). Issues that this Court will focus on include, but are not limited to: 1.) whether the applicant has complied with the terms of the suspension order; 2.) whether the applicant proves his conduct while under suspension is worthy of public trust and confidence; 3.) whether the applicant proves he possesses professional capabilities to serve the public as a lawyer; 4.) whether the applicant presently exhibits good moral character; and, 5.) whether the applicant proves he appreciates the wrongfulness of his prior misconduct, manifests contrition for his prior professional misconduct, and has re-

habilitated himself from past derelictions. SCR 2.300(6)(a)—(e).

Furthermore, an applicant for readmission is "held to a substantially more rigorous standard than a first time applicant for an initial admission to the Bar." SCR 2.300(7). And, proof must be presented by the applicant to overcome prior adverse judgments against him. *Id.* With these standards in mind, we turn to evaluate whether Scholl has presented clear and convincing evidence that he is fit to return to the practice of law.

Initially, we find that Scholl has complied with the terms of his previous suspension order. Although the KBA disputes whether or not Scholl indeed complied, arguing that he failed to send letters of his resignation to his clients *or to the Supreme Court as required by* the Suspension Order, Scholl's counsel nonetheless made it known in a post-hearing brief that Scholl had no clients left at the time he resigned under terms of disbarment. Furthermore, Scholl has not engaged in the practice of law since his resignation under terms of disbarment in 1985, and he has complied with all current CLE requirements.

However, we are in agreement with the Recommendation of the Character and Fitness Committee, as adopted by the KBA, that Scholl is not fit to return to the practice of law for a number of reasons.

First, Scholl has failed to show, by clear and convincing evidence, that he is worthy of public trust and confidence. SCR 2.300(6)(b). Most striking on this point, we find that Scholl has yet to make restitution of approximately $2500 to several of his former clients, a failure that is twenty-one years in the making. Scholl argues, though unpersuasively, that he needs a structured plan to make restitution; however, twenty-one years is more than

enough time for Scholl to effectuate a plan to repay his former clients monies he took from them for services he never rendered. Moreover, Scholl failed to present any evidence of restitution in support of his first reinstatement attempt. And, during his second reinstatement attempt, the subject of this opinion and order, Scholl apparently attempted to hide the fact that he is a beneficiary of an irrevocable trust, suggesting to this Court that he has been financially capable of making restitution despite his filing for bankruptcy in September 1996.

Next, we find that Scholl has failed to show, by clear and convincing evidence, that he possesses sufficient professional capabilities to serve the public as a lawyer. SCR 2.300(6)(c). Again, we cannot avoid the fact that Scholl has had twenty-one years to make restitution to his former clients, but has yet failed to do so. Moreover, Scholl's personal battle with depression is concerning, especially when at least one doctor has characterized Scholl's condition as manifesting "suicidal implications." Most troubling about this situation is that Scholl admittedly relies upon friends to tell him when he shows signs of depression. Either Scholl has no diagnosable disease or he is not sufficiently concerned about his own well-being to seek treatment for this problem. Regardless, either conclusion supports the conclusion that Scholl does not possess sufficient professional capabilities to be reinstated.

We also find that Scholl has failed to show, by clear and convincing evidence, that he presently exhibits good moral character. SCR 2.300(6)(d). Although Scholl has shown past and present involvement with the Penner Foundation, has maintained steady employment since his resignation under terms of disbarment, and has admitted to being financially sta-

ble for several years, this Court is nonetheless concerned that Scholl has not made restitution to his former clients. Furthermore, Scholl has been unable to state whether or not he is, or ever has been, current with his child support obligations to his only son, Ian Scholl. As noted by the Committee, Scholl does not appear concerned about whether he has fulfilled his legal and moral obligation to support his child.

Finally, we find that Scholl has failed to show, by clear and convincing evidence, that he appreciates the wrongfulness of his prior misconduct, that he manifests contrition for his prior professional misconduct, and that he has rehabilitated himself from past derelictions. SCR 2.300(6)(e). Although the Committee has noted that Scholl expressed a degree of remorse for his actions in his testimony before the Committee, there is still the lingering issue that Scholl has not provided evidence of restitution. Simply put, there is little evidence, if any, that Scholl has rehabilitated himself in the area of fiscal responsibility. Moreover, as previously discussed, there is some evidence suggesting that Scholl has been less than candid with the Committee during his reinstatement proceedings concerning the trust he created to benefit three children and himself—the latter fact discovered upon cross-examination of Scholl.

The KBA notes that Scholl tendered a "Voluntary Restitution Plan" on the day of his hearing in which he would repay his former clients in installments from 5% of his disposable income after taxes. Under this plan, Scholl would receive a $100 credit towards the repayment of each victim, and none of his former clients receiving repayment under this plan would receive any interest on the principal amount each paid to Scholl for services he never rendered.

Under all the circumstances, we are persuaded by the Recommendation of the Character and Fitness Committee, as adopted by the KBA that Scholl has failed to meet his burden for reinstatement.

Accordingly, it is ordered that the KBA's recommendation be adopted, and it is further ordered that:

1.) Jan Schurch Scholl, having failed to met his burden for reinstatement, be denied such reinstatement until he has complied with all orders to make restitution to his former clients; and,

2.) In accordance with SCR 3.450, Scholl is directed to pay all costs associated with this disciplinary proceeding against him in the sum of $1,403.12. Upon the finality of this Opinion and Order, an order of execution may issue from this Court for said costs.

All concur.

McANULTY, J., not sitting.

ENTERED: February 22, 2007.

/s/ Joseph E. Lambert
Chief Justice