**Michael L. JAMES, Movant,**

v.

**KENTUCKY BAR ASSOCIATION, Respondent.**

No. 2003–SC–000715–KB.

Supreme Court of Kentucky.

Jan. 22, 2009.

## OPINION AND ORDER GRANTING REINSTATEMENT

This matter comes before the Court on the Application for Reinstatement by Michael L. James pursuant to SCR 3.510. The Character and Fitness Committee ("Committee") found that James presently exhibits good and moral character and appreciates the prior actions which led to his disbarment. Based on these findings, the Committee recommended that James be reinstated to the bar. The Board of Governors ("Board") reviewed the Committee's recommendation and voted to approve the application. We agree with the Board's recommendation and hereby approve James' application for reinstatement.

### I. BACKGROUND

On September 3, 1998, the Kentucky Supreme Court suspended James from the practice of law for 30 days. Three other separate discipline cases against James followed and resulted in additional suspensions that totaled 25 months. James has never been reinstated to the practice, so

that 25 month period has become a suspension of nine and a half years.

James was ordered to notify all of his clients of his inability to represent them and to notify all courts in which he had matters pending, of his suspension. He was ordered to provide copies of these notices to the KBA. The Court also issued an Order which directed James to "seek treatment for depression and to provide medical records to the KBA in regard to such treatment" before filing any petition for reinstatement.

During the Committee's investigation it heard the testimony of three judges who knew him personally. Respectively, all three judges indicated that they believed James' misbehavior stemmed from one period in his life when he was going through a divorce, that they had faith in James' ability to practice law, that they believed James was remorseful for his actions, and that they believed James should be reinstated to the practice of law.

The Committee also heard the testimony of a mental health professional who was asked to prepare a psychological treatment plan for James. That individual recalled being satisfied with James' participation and process and stated that he released him from treatment in September 2001. He thinks he sent a report to the "referral source"; however, he could not state that with absolute certainty.

Additionally, a friend, colleague, and fellow volunteer youth football coach, submitted a letter of recommendation for James in which he described him as gentlemanly and scholarly. After their relationship as volunteer coaches together, he had requested that the school system hire James as his assistant high school coach, which it did.[1]

James applied for reinstatement on September 16, 2003. Pursuant to SCR 3.510(4), his application was referred to the Character and Fitness Committee, and a full investigation followed in accordance with SCR 2.040. On October 16, 2007, the Committee held a formal hearing pursuant to SCR 2.050. On March 5, 2008, the Character and Fitness Committee issued a report wherein it determined that James has meet his burden of showing by clear and convincing evidence that he possesses the requisite character, fitness and moral qualification for readmission to the practice of law. SCR 2.300(6), SCR 3.330 and *White v. Kentucky Bar Association*, 989 S.W.2d 573 (Ky.1999).

## II. FINDINGS

### A. Burden of Proof

■ Where an attorney, proven to have violated our rules regarding professional conduct, seeks to be readmitted to the practice of law, he bears the burden "of proving by clear and convincing evidence that [he] possesses the requisite character, fitness and moral qualification for readmission." [2] SCR 2.300(6). "[A]n applicant for readmission is held to a substantially more

---

1. The Committee's investigation revealed that James has no pending criminal charges and that he has not practiced law during his suspension (other than an appearance at a mediation). According to a letter from Jay R. Garrett, Chief Deputy Bar Counsel, there are no KY Bar disciplinary matters pending against James. A KBA Memorandum dated September 10, 2003 stat[ed that all Client Security Fund claims had been resolved and a Memoranda from the KBA Continuing Legal Education Commission dated September 12, 2003 and July 20, 2005 showed satisfactory CLE hours.] . . .

2. *Scholl*, 213 S.W.3d 687, 689–690; SCR 2.300(7) ("an applicant for readmission is held to a substantially more rigorous standard than a first time applicant for an initial admission to the Bar").

rigorous standard than a first time applicant for an initial admission to the Bar." SCR 2.300(7). We focus in part on:

1.) whether the applicant has complied with the terms of the suspension order;
2.) whether the applicant proves his conduct while under suspension is worthy of public trust and confidence;
3.) whether the applicant proves he possesses professional capabilities to serve the public as a lawyer;
4.) whether the applicant presently exhibits good moral character; and,
5.) whether the applicant proves he appreciates the wrongfulness of his prior misconduct, manifests contrition for his prior professional misconduct, and has rehabilitated himself from past derelictions. SCR 2.300(6)(a)-(e).

SCR 2.300(7); *Scholl v. Kentucky Bar Ass'n*, 213 S.W.3d 687, 689–690 (Ky.2007).

## B. Analysis

■ In an effort to explain the cause of the breakdown that led to his suspension, James points to his divorce and its proximity in time to the misconduct. The record appears to support this argument in that it does not indicate that James' misconduct was part of any pattern of wrongful activity extending for an indefinite period of time. In fact, James had practiced without incident in four jurisdictions until September 3, 1998. It wasn't until 1993 when his marriage began to dissolve and a child custody battle arose between him and his wife (who is also an attorney) that James' professional responsibilities began to erode. It is important to note, however, that the explanation tendered by James is not an attempt to detach himself from his wrongful behavior by refusing responsibility for his actions.[3] Rather, James' remorse for and recognition of his misconduct is strongly supported by the testimony of fellow attorneys, former and current judges, and two mental health professionals. Although James refused to admit guilt in the Hardin case and mistakenly participated in a mediation while barred from doing so, these actions did not deter the Committee and do not outweigh the fact that James has otherwise credibly repented the wrongfulness of his conduct and manifested true contrition for his prior misconduct.

We have consistently held that "if a disbarred attorney can prove after the expiration of a reasonable length of time that he appreciates the significance of his derelictions, has lived a consistent life of probity and integrity, and shows that he possesses that good character necessary to guarantee uprightness and honor in his professional dealings and the faithful discharge of his duties as a lawyer, and therefore is worthy to be restored, the court will so order." E.g., *Futrell v. Kentucky Bar Ass'n*, 189 S.W.3d 541, 550 (Ky.2006). James' suspension totaled 25 months yet he waited nine and a half years before applying for reinstatement. During that time he complied with the Orders of this Court and showed candor towards all reviewing authorities. Although the KBA Office of Bar Counsel ("OBC") objects to the Board's recommendation on the grounds that James failed to comply with our Orders regarding psychological treatment and notifying clients of his suspension, these failures appear to be more the

---

**3.** *See Futrell*, 189 S.W.3d 541, 550 (Ky.2006) (where suspended attorney argued his misconduct was an isolated breakdown stemming from his divorce yet the Court found the misbehavior was, in fact, part of a pattern beginning well before the attorney was even married).

result of confusion than a lack of appreciation for those Orders. Therefore, the reasons cited by the OBC in its objection do not negate our finding that James satisfactorily cooperated with this Court and other reviewing authorities while suspended.

Finally, and most importantly, during James' absence from practice he made a sincere effort to address the cause of his breakdown and resolve those issues. James addressed his problems directly by extending his break from law practice beyond that which was mandated and for an amount of time which he found sufficient to rehabilitate himself and the personal and professional relationships affecting his practice.

## III. CONCLUSION AND ORDER

"At its most basic level, the reinstatement inquiry involves looking into an applicant's 'conception of the serious nature of his act and his previous and, what is of more importance, his subsequent conduct and attitude toward the courts and the practice.'" *Id.* Placing emphasis on James' conduct following his suspension and his attitude toward the courts and practice of law, including the numerous statements attesting to his moral and professional capabilities from respected members of the legal community, we are persuaded by the Recommendation of the Character and Fitness Committee as adopted by the Board that James has met his burden for reinstatement.

Accordingly, we hereby adopt the Recommendation of the Board and approve the entry of an Order restoring Michael L. James to the practice of law in the Commonwealth of Kentucky.

Thus, it is ORDERED that:

Michael L. James, KBA Member No. 89260, is restored to the practice of law in the Commonwealth of Kentucky, subject to his payment of costs incurred in this proceeding and $5,215.86 for balance due to the Kentucky Bar Association as required by SCR 3.500(5).

All sitting. All concur.

ENTERED: January 22, 2009.

/s/ John D. Minton, Jr.

Chief Justice